# Central of Georgia Railway Co. v. Sims.

## Damage for Delay in Delivering Freight.

(Decided Nov. 24, 1910.   53 South. 826.)

1. *Commerce; Interstate; Federal Regulation.*—A contract for the delivery of freight from one state to another relates to interstate commerce and is subject to Federal regulation.

2. *Courts; State Courts; Federal Statutes.*—A federal statute regulating interstate commerce is recognized and will be enforced by the state courts.

3. *Same.*—The interstate commerce law of Feb. 4, 1887, as amended by the Act of Congress of June 29, 1906, will be enforced by the state courts.

4. *Constitutional Law; Due Process; Statutes; Construction.*—The interstate commerce Acts of Feb. 4, 1887, as amended by the Act of June 29, 1906, makes a judgment against an initial carrier only prima facie evidence against a connecting carrier and it is not unconstitutional as depriving the connecting carrier of its property without due process.

5. *Same; Party Entitled to Raise; Question.*—An initial carrier in an action against it for the loss of freight under the interstate commerce act as amended June 29, 1906, may not question the validity of the provision permitting it to recover from the connecting carrier for the loss sustained by it, under the rule that one not within a class affected by a statute may not attack its unconstitutionality.

6. *Carriers; Goods; Contracts; Enforcement.*—A bill of lading for an interstate shipment containing clauses repugnant to the interstate commerce act as amended is not thereby entirely vitiated so as to deny the holder thereof recovery for a failure to safely transport the goods.

7. *Same; Limiting Liability.*—A carrier may not limit the liabilities imposed on it by the interstate commerce act as amended, by contract because of the rate charged for transportation.

8. *Appeal and Error; Harmless Error; Pleadings.*—Where a plea is bad and cannot be amended so as to state a defense without a departure from the defense therein attempted, it is harmless error to strike such a plea instead of disposing of it by demurrer.

APPEAL from Russell Circuit Court.

Heard before Hon. A. A. EVANS.

Action by J. E. Sims against the Central of Georgia Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The pleadings and the issues sufficiently appear in the opinion. The general charge of the court, to which exception is reserved, is as follows: "I charge you, gentlemen of the jury, that if you believe from the evidence in this case that there was an unreasonable delay in the transportation in the said car load of peaches from Seale, Ala., to New York, and that by reason of said unreasonable delay said peaches were damaged, then the defendant in this case would be liable to the plaintiff for whatever damages he sustained by reason of said unreasonable delay in the transportation of said peaches, regardless of where, or on what part of the route, or on what line of connecting carriers the damage may have occurred."

G. L. COMER, for appellant. Both parties agreed to the stipulation in the contract and neither can abrogate it. Under it, appellant specially limited its liability to damages occurring on its line, and the proof showed unquestionably that no damage occurred while the car was in its possession, but that it was delivered in good condition and in reasonable time to the connecting carrier.—*G. P. R. R. Co. v. Hughart,* 90 Ala. 36; *Cooper v. Ga. Pac.,* 92 Ala. 329; *L. & N. v. Jones,* 100 Ala. 263; *L. & N. v. Landers,* 135 Ala. 504; *Walter v. A. G. S.,*

142 Ala. 474. The court erred in striking plea 4, as this plea set up a reasonable provision of the contract agreed to by both parties.—*Southern Express Co. v. Capterton,* 44 Ala. 101. Plea 5 set up a special contract in consideration of a reduced rate and this was binding on appellee.—*W. of Ala. v. Caldwell,* 91 Ala. 340; S. C. 97 Ala. 341; *L. & N. v. Landers, supra.* The court erred in striking the 6th plea.—*S. & N. R. R. Co. v. Henlein,* 52 Ala. 606; *Central R. R. & B. Co. v. Smithers,* 85 Ala. 47. The interstate commerce act of Feb. 4, 1887, as amended by the Act of June 29, 1906, is contrary to articles 5 and 14 of the Constitution of the United States as a deprivation of property without due process.—*Zuphur v. S. & N. R. R. Co.,* 58 Ala. 594; *Wilburn v. McColley,* 63 Ala. 436; *Calhoun v. Fletcher,* 63 Ala. 574. In addition to the above authorities cited to the above proposition that special contracts may be made and entered into between common carriers and shippers under the laws of Alabama, see: *Jones v. C. S. & M. R. R. Co.,* 89 Ala. 376; *L. & N. R. R. Co. v. Landers, supra; McNeal v. A. C. L. Ry. Co.,* 161 Ala. 319.

GLENN & DE GRAFFENRIED, for appellee. The shipment involved was an interstate shipment and hence, the contract must not be violative of the provisions of the interstate commerce law. The matters set up in the 2, 3, 4, 5 and 6 pleas was in violation of the provision of that law as amended by the act of Congress of June 29, 1906, and hence, the pleas were properly sticken.—*So. Pac. v. Crenshaw,* 63 S. E. 865. It was within the jurisdiction of the circuit court of Russell county to enforce the provisions of this act.—*So. Pac. v. Crenshaw, supra; L. & N. v. Scott,* 118 S. W. 990; *G. H. & S. A. Ry. Co. v. Pepper & Co.,* 115 S. W. 107. The act is not unconstitutional as restraining the making of contracts.

—*Frisbie v. U. S.*, 157 U. S. 165. The constitutionality of the act otherwise has been passed upon and upheld in the following cases: *L. & N. R. R. Co. v. Scott, supra; G. H. & S. A. Ry. Co. v. Pepper, supra; Riverside Mills v. At. C. L. Co.*, 168 Fed. Rep. 987. See also, *St. L. M. Co. v. Montana M. Co.*, 171 U. S. 650; *U. S. v. Freight Assn.*, 166 U. S. 290. Congress is vested with the exclusive power over interstate commerce.—*Bowman v. C. & N. W. Co.*, 125 U. S. 465. The law embraces every specie of property which is subject to interstate transportation and would be obnoxious to public policy were it not so.—*S. & N. R. R. Co. v. Henlein*, 52 Ala. 606. The provisions of the bill of lading as set out in plea 4 were illegal and void.—*So. Ex. Co. v. Tupelo*, 108 Ala. 507; *N. C. & St. L. Ry. Co. v. Long & Son*, 50 So. 130. This is also true of the provisions attempted to be set up in pleas 2, 3, 5 and 6, because in contravention of the interstate commerce law.—*Robertson v. Hayes*, 83 Ala. 281; *Moog v. Hanna*, 93 Ala. 503; *Turner v. Merchants Bank*, 126 Ala. 397; *Kennett v. Chambers*, 14 How. 36. They could not be amended and were properly stricken. —*Dix v. Belcher*, 80 Ala. 369; *Couch v. Davidson*, 109 Ala. 313. The contract was nevertheless a bill of lading, and may be enforced.—*L. & N. v. Landers*, 135 Ala. 504; *Sims v. Ala. Co.*, 132 Ala. 311.

ANDERSON, J.—This was an action for the breach of a contract of shipment, whereby the defendant undertook to transport a number of crates of peaches from Seale, Ala., to New York City, and the breach assigned, in varying forms, was the failure to transport them in such a way as to prevent loss, decrease, or destruction of the value of same, and that the injury or damage to the peaches occurred on defendant's line or the connecting lines over which it undertook to transport them to

[Central of Ga. Railway Co. v. Sims.]

New York. The special pleas from 2 to 6, inclusive, do not deny that the damage or injury occurred, after the issuance of the bill of lading and before a delivery of the peaches or before they were ready for delivery, but each of them attempts to set up certain clauses of the contract of shipment limiting the defendant's liability. The principal point insisted on being that the contract limited the defendant's liability for loss, damage, or destruction on its own line, and that said loss, damage, or destruction occurred after the peaches had been safely delivered to another carrier. These provisions, or some of them, might be effective and binding on the parties, under our decisions as to interstate shipments prior to the enactment of what is known as the Carmack amendment to section 20 of the interstate commerce law of the United States (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), passed June 29, 1906 (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. Supp. 1907, p. 906, Supp. 1909, p. 1163]), and might be now binding as to interstate shipments, but for section 5546 of the Code of 1907.—*McNeill v. Atlantic Coast Line R. Co.*, 161 Ala. 319, 49 South. 797; *Jones' Case*, 89 Ala. 376, 8 South. 61; *Landers' Case*, 135 Ala. 510, 33 South. 482.

The subject-matter of the present contract, the transportation of goods from one state to another, was an act of interstate commerce, and was subject to federal cognizance and regulation.—*Southern R. Co. v. Harrison*, 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936. And when federal statutes have been enacted governing and regulating interstate commerce, they will be recognized and enforced by the courts of this and other states.—*Harrison's Case, supra; M. & O. R. R. Co. v. Dismukes*, 94 Ala. 131, 10 South. 289, 17 L. R.

A. 113; *Southern Pac. Co. v. Crenshaw,* 5 Ga. App. 675, 63 S. E. 865.

So much of the interstate commerce act as amended, and as is necessary to be set out, reads as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." While this act is enforceable generally by the Interstate Commerce Commission, the above-quoted part has been recognized and enforced by the courts, state and federal.—*Smeltzer v. St. Louis R. Co.* (C. C.) 158 Fed. 649; *Riverside Mills v. A. C. L. R. R. Co.* (C. C.) 168 Fed. 987; *So. Pac. Co. v. Crenshaw,* 5 Ga. App. 675, 63 S. E. 865; *L. & N. R. R. Co. v. Scott,* 133 Ky. 724, 118 S. W. 990; *Galveston H. & S. R. R. Co. v. Piper Co.* (Tex. Civ. App.) 115 S. W. 107. So, too, has

[Central of Ga. Railway Co. v. Sims.]

it been held that this enactment was within the power of Congress and not unconstitutional. Appellant contends that the last part of the above quotation, that is so much thereof as permits the initial carrier, upon whose line the loss or damage occurred, the amount of such loss or damage as it was required to pay to the owner, "as may be evidenced by any receipt, judgment, or transcript thereof," is violative of the Constitution because it deprives the carrier, causing the loss or damage, of due process, in that it makes the receipt, judgment or transcript conclusive evidence against him when he was not a party to the cause between the owner and the initial carrier. If they were made conclusive instead of presumptive or prima facie evidence, there might be merit in the contention.—*Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594. The act does not say, that the receipt, judgment, or transcript should be conclusive evidence, and if it is reasonably susceptible of being construed as meaning prima facie or presumptive evidence, a construction upholding its constitutionality should be given.—*Smeltzer v. St. Louis R. R. Co., supra.* Moreover, one not within a class affected by the statute cannot attack its constitutionality.—*Grenada Lumber Co. v. Mississippi,* 217 U. S. 433, 30 Sup. Ct. 535, 54 L. Ed. ——. "One who would strike down a statute as unconstitutional must show that it affects him injuriously, and actually deprives him of constitutional right."— *Southern R. Co. v. King,* 217 U. S. 524, 30 Sup. Ct. 594, 54 L. Ed.——. This defendant would be benefited rather than burdened by this much of the act and could not complain of this constitutional defect, if one existed, but which we do not think is the case.

This suit is based upon the bill of lading, and notwithstanding it contained clauses contracting against liability in certain instances, and which were repug-

nant to the federal statute, this defect did not vitiate the entire contract of shipment so as to preclude the holder from recovering for a failure to safely transport the goods. The law does not prohibit the contract to ship, but merely prohibits the carrier from exempting itself from liability by any contract, receipt, rule, or regulation. Each of the special pleas invoked certain clauses of a contract, exempting the defendant from liability and relied upon the contract as an exemption; whether or not the loss occurred upon another line, or whether or not the exemption from liability was due to a failure to make a claim by the consignee within 30 days, or whether or not the contract was based upon the rate of freight charged, each of the pleas referred to and relied upon a contract made at the time of shipment as exempting it from liability, and which was forbidden by law, and void. We do not understand the interstate law as exempting carriers from the influence of the above-quoted part of the statute, because of any particular rate charged, and the plea, which attempts to escape liability, because of the rate charged, did not except the defendant from the influence of so much of the act as renders the contract, exempting from liability, void.

Whether or not the defendant should have resorted to a demurrer rather than to motion to strike (section 5322 of the Code of 1907, and cases noted in citation), we need not decide. For if the court committed the technical error of striking, it was error without injury. The pleas relied upon a contract of exemption, which was void, and in order to become of any benefit to the pleader, there would have to be an abandonment of the contract relied upon, and the abandonment would have to be a departure from the original pleas. The rule is, that although a plea may be improperly eliminated, if

it could not be amended so as to make it a good plea without departing from the defense therein attempted, the error as to the manner of getting rid of it would be error without injury.—*Sunflower Co. v. Turner Co.,* 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20; *Ryall v. Allen,* 143 Ala. 222, 38 South. 851. It is true these two cases deal with the sustaining of inapt or general demurrers, but the same rule should obtain as to the striking of pleas. In other words, when a plea is bad, and is not capable of being amended, so as to make it a good plea, without departing from the defense therein attempted, it matters not whether it was stricken upon motion or by sustaining a general or inapt demurrer thereto, and the trial court will not be reversed for getting rid of same. See, also, *Rooks v. State,* 83 Ala. 79, 3 South. 720.

The case of *McNeill v. Atlantic Coast Line R. R. Co.,* 161, Ala. 319, 49 South. 797, fully sustains appellant's contention that contracts similar to the one here considered have been enforced in this state, but it should be noted that the contract in said case was made in May, 1905, and the amendment to the federal statute, above discussed, was not enacted until June 29, 1906.

There was no error in the oral charge of the court as excepted to by the appellant.

The judgment of the circuit court is affirmed.

Affirmed.

DOWDELL, C. J., and MAYFIELD and SAYRE, JJ., concur.